Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 03 C 50519 | **DATE** | 11/22/2004 |
| **CASE TITLE** | | Loy vs. Motorola | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for a Protective Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated on the attached Memorandum Opinion and Order, Defendant's Motion for a Protective Order is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | 11-23-04 | |
| | Notified counsel by telephone. | date docketed | 28 |
| | Docketing to mail notices. | JT | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 11/22/2004 | |
| AM | courtroom deputy's initials | date mailed notice | |
| | | GG | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| JESSICA LOY, f/ka/ JESSICA VINCER, individually and on behalf of all other Motorola employees similarly situated, ) ) ) ) | | |
| Plaintiff, ) ) | | |
| v. ) ) | Case No. 03-C-50519 | |
| ) ) | Magistrate Judge | |
| MOTOROLA, INC., a corporation, ) ) ) | P. Michael Mahoney | |
| Defendant. ) | | |

## MEMORANDUM OPINION AND ORDER

Jessica Loy ("Plaintiff") filed a two count Amended Complaint against Motorola, Inc. ("Defendant") individually and on behalf of all other Motorola employees similarly situated, on April 15, 2004. Plaintiff filed her Amended Complaint pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), Section 107(a)(2)(B), 29 U.S.C. § 2601, et. seq., and in the alternative, pursuant to Fed. R. Civ. P. 23(b)(3).[1] Currently, no motions to certify a class or collective action have been filed in this case. This matter is now before the court on Defendant's Renewed Motion for a Protective Order relating to Plaintiff's First Request for Production and certain depositions sought by Plaintiff. For the reasons stated below, Defendant's Motion for a Protective Order is denied.

---

[1] The case was originally filed on December 2, 2003, on behalf of twenty-three Motorola employees, but the original complaint was voluntarily dismissed by the Plaintiffs.

1

## I. Background

For the limited purposes of this motion, the court accepts as true the background facts relayed in Plaintiff's Response to Defendant's Motion for a Protective Order. By doing so, the court makes no judgment about the actual truth or accuracy of the facts alleged. Plaintiff worked in the Login Department at Motorola's Rockford facility from April, 2001, to April, 2002. While working for Defendant, Plaintiff was granted medical leave under the FMLA from December 4, 2001, through December 9, 2001, and intermittent leave thereafter. Allegedly, Plaintiff's FMLA leave time was used to calculate her employee production average, thereby lowering her average and denying her the opportunity to participate in various benefits/incentive programs. On April 22, 2002, Plaintiff was told that she was being terminated for tardiness and attendance issues.

Plaintiff asserts that the alleged inclusion of FMLA leave time into her productivity average was a violation of the FMLA. In addition, Plaintiff alleges that Defendant calculated other Motorola employees' productivity without regard to the FMLA's requirement of excluding leave time under the Act. Thus, Plaintiff brings this action as an individual and on behalf of other employees similarly situated pursuant to Section 107(a)(2)(B) of the FMLA, and in the alternative, Fed. R. Civ. P. 23.

On or about June 8, 2004, Plaintiff served her First Request for Production of Documents on Defendant. Defendant did produce materials responsive to Plaintiff's request, in particular in regard to the original twenty-three Plaintiffs. Plaintiff, however, contends that outstanding materials have not been turned over, including various employee files and information on how Motorola calculated productivity rates at times relevant to her lawsuit. As part of her pre-certification discovery, Plaintiff also seeks to depose Motorola employees who are

knowledgeable about Defendant's FMLA policies and practices and productivity tracking customs.

Defendant first moved for a protective order relating to Plaintiff's discovery on August 12, 2004. Defendant's motion was denied on August 18, 2004. Since then, Defendant has taken the deposition of the Plaintiff, and has renewed its Motion for a Protective Order based on information discovered at the deposition that convinced Defendant that Plaintiff is not an appropriate representative for additional individuals who may have claims against Motorola under the FMLA regarding productivity practices. Because of this, Defendant seeks to limit Plaintiff's broad discovery generally allowed under Fed. R. Civ. P. 23(b)(3).

Underlying Defendant's Motion for a Protective Order is the issue of whether Plaintiff can proceed under Fed. R. Civ. P. 23(b)(3) as Plaintiff asserts, or whether FMLA class violations must be treated as collective actions under the Fair Labor Standards Act ("FSLA"), 29 U.S.C. §216(b), as Defendant asserts. Claims filed under §216(b) are different than Rule 23 class actions because §216(b) collective actions require parties to "opt in" to be bound, while under Rule 23, parties must "opt out" not to be bound. *See Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp.2d 759 (N.D. Ill. 2004). Class based discovery under Rule 23 is generally broader than in §216(b) collective actions as well.

**II.   Discussion**

Whether or not Plaintiff's case can proceed as a class or collective action is not the issue currently before the court, nor is it normally a decision for the Magistrate Judge to make. However, whether Plaintiff proceeds under the FLSA or Rule 23 impacts Defendant's Motion for a Protective Order so the Magistrate must reach that issue.

Defendant argues that alleged class violations of the FMLA must be treated as collective actions under the FLSA, 29 U.S.C. §216(b). Defendant bases its argument on the statutory language of the FMLA, stating that the language of the enforcement provision of the FMLA, 29 U.S.C. §2617(a)(2) mirrors that of the FLSA, 29 U.S.C. §216(b). Further, Defendant quotes FMLA legislative history that suggests the enforcement scheme of the FMLA was intended to be identical to that of the FSLA:

> [The FMLA's] enforcement scheme is modeled on the enforcement scheme of the FLSA, which has been in effect since 1938. Thus the FMLA creates no new agency or enforcement procedures, but instead relies on the time-tested FLSA procedures already established by the Department of Labor. . . . The Relief provided in the FMLA also parallels the provisions of the FLSA.

S. Rep. No. 103-3, at 35 (1993). Defendant also compares the FMLA with the Age Discrimination in Employment Act ("ADEA") because actions brought under ADEA have been treated as opt-in collective actions under the FLSA, not Rule 23. Defendant finally notes that courts interpreting the FMLA frequently track FLSA interpretations on collateral issues such as damages[2] and jury trials.[3]

Plaintiff, on the other hand, argues that class violations of the FMLA must be treated as opt-out actions under the FMLA, 29 U.S.C. §2617(a)(2) and pursuant to Fed. R. Civ. P. 23(b)(3). In support of her argument, Plaintiff states that the statutory language of the FMLA §2617(a)(2) clearly does not incorporate the express "consent" and "opt-in" language of the FLSA, which provides in §216(b) that no person may be bound by, or benefit from, a judgment unless the

---

[2]*See Thorson v. Gemini, Inc.*, 96 F.Supp.2d 882, 890 (N.D. Iowa 1999).

[3]*See McNeela v. United Air Lines, Inc.*, 1999 WL 987096, *5 (N.D. Ill. Oct. 28, 1999).

person has filed a written consent to become a party. This is, of course, in direct contrast to Rule 23, which binds absent parties who fall within a certified class unless they opt out.

Plaintiff also points out that when other statutes, like the ADEA, incorporate the "opt-in" enforcement procedures of §216(b), they do so expressly. For example, Section 7(b) of the ADEA specifically directs that "provisions of this Chapter shall be enforced in accordance with the powers, remedies, and procedures provided in Sections . . . 216 of this title." 29 U.S.C. §626(b).[4] Plaintiff asserts that the FMLA contains no such provision, and absent a contrary intent of Congress, Fed. R. Civ. P. 23 is the appropriate enforcement mechanism. Plaintiff also analogizes the FMLA with class claims brought under Title VII and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, because these class claims, likewise, do not incorporate the FLSA, and are subject to certification by the court pursuant to Rule 23.[5]

In *Califano v. Yamasaki*, the Supreme Court held that "[i]n the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate." 442 U.S. 682, 700 (1979)(quoting Fed. R. Civ. P. 1). Because the plain language of the FMLA is silent as to the appropriate vehicle for an action to proceed on the behalf of others, this court is inclined to apply Fed. R. Civ. P. 23 as it moves with this case through its discovery stages. While Defendant argues that FMLA claims are highly factual, and thus inappropriate for a class context, Defendant

---

[4]*See also King v. Gen. Elec. Co.*, 960 F.2d 617, 621 (7th Cir. 1992)(citing *LaChapelle v. Owens-Illinois, Inc.*, 413 F.2d 286, 289 (5th Cir. 1982)(finding that because ADEA §7(b) "incorporates the enforcement provisions of the Fair Labor Standards Act, 29 U.S.C. §216, by reference" the class action procedure under Fed. R. Civ. P. 23 is pre-empted).

[5]*See, e.g., Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1965).

has not pointed to any inconsistency between the FMLA and the procedures of Rule 23. Thus, this court finds that Rule 23 class action rules are appropriate to apply in this case.[6]

Accordingly, this court turns to Defendant's Motion for a Protective Order. Under Rule 26(c), it is clear that "for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (1) that the disclosure or discovery not be had." Fed. R. Civ. P. 26(c)(1). The district court has discretion to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co., v. Rhinehart*, 467 U.S. 20, 36, 104 (1984). Only good cause is required in determining whether or not to issue a protective order. *Id.* at 37. In deciding whether good cause exists, the district court must balance the interests of the parties, taking into account the harm to the party seeking the protective order and the importance of the disclosure to the non-moving party. *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997). The party seeking the protective order has the burden of showing that good cause exists by alleging particular and specific facts. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981).

Further, courts have considerable discretion in deciding whether, and to what degree discovery in regards to class certification issues should go forward. Typically, discovery is permitted to allow Plaintiff to show the existence of a class. Specifically, discovery is allowed where there is a need to determine whether Rule 23 requirements are met and whether the action fits in one of the Rule 23(b) categories. Discovery must be sufficiently broad to give the plaintiff

---

[6]Defendant cites the court to one reported decision where an FMLA class claim was brought under Rule 23. *See Bond v. Abbott Labs.*, 7 F. Supp.2d 967 (N.D. Ohio 1998).

a realistic opportunity to meet the requirements of class certification, but at the same time, a defendant should be protected from overly burdensome or irrelevant discovery. *See McCray v. Standard Oil Co.*, 76 F.R.D. 490 (N.D. Ill. 1977). Rule 26(c) provides courts the authority to limit the scope of discovery generally, and Rule 26(c)(4) allows the court to circumscribe discovery of irrelevant matters.

While Defendant does argue that further production and depositions under Plaintiff's requests would be burdensome, Defendant does not lay out what its burden would be to produce under Plaintiff's request other than concluding that Plaintiff's discovery is "inappropriate, vexatious, and completely unnecessary." Instead, Defendant's central argument is that it should not be required to submit further discovery because Plaintiff cannot possibly be a proper class representative under Rule 23. Defendant maintains that it has turned over all materials relating to Plaintiff's individual claim, and that any other discovery is irrelevant and excessive in scope because Plaintiff seeks information beyond what Defendant characterizes as a "simple" claim regarding Plaintiff's termination for instances of tardiness that possibly should have been excused time under the FMLA. (Def.'s Mot., p. 7).

Defendant vehemently argues that Plaintiff's deposition testimony illustrates that she cannot connect her FMLA claims to productivity, and thus, there is no basis for her class claim challenging Defendant's productivity practices under the FMLA because she cannot be a proper class representative. Defendant quotes excerpts from Plaintiff's deposition transcript in support of its argument. Most of the excerpts go to showing that Plaintiff's claim is unrelated to productivity. For example, Defendant cites Plaintiff's statement that she was not terminated for poor productivity, and that Plaintiff does not know if any of her FMLA leave time days were

7

included in Motorola's productivity calculations; she just thought they were "kind of off." Defendant also notes that different employee teams used different productivity tracking systems, and that Plaintiff only knows about her own team. Finally, Defendant downplays Plaintiff's assertion that employees who took FMLA leave time were penalized by being refused time-off incentives because Plaintiff could not state which weeks she thinks she did not get a bonus of getting off early on Fridays because she took FMLA leave time.

Plaintiff argues, with equal confidence, that she has connected her claim for a violation of the FMLA to production average issues, maintaining that adverse employment actions were taken against her due to the inclusion of FMLA leave time in her productivity averages, *despite the fact that* other alleged FMLA violations ultimately resulted in her employment termination. Plaintiff asserts that her deposition testimony bears out her productivity claim, and she also presents the declarations of twenty other present and former Motorola employees who also claim FMLA leave time was used to lower their productivity averages.

Plaintiff cites excerpts from her deposition in support of her argument. She notes that she testified that "if she took the total of her productivity for the week and divided that number by the actual number of hours/days that she worked, her weekly production average was higher than the production average reported by Motorola. Further, if she divided her weekly production by 5 days (even if she worked less than 5 days), she would get the same exact weekly production average as determined by Motorola." (Pl.'s Resp., p. 3). Plaintiff also cites to her testimony that "employees who met their daily production quotas for each work day during that work week were permitted to leave work early on the last work day of that week. However, if an employee missed a day of work for any reason, including FMLA leave, that employee was not permitted to

8

leave work early . . . even if that employee had met his or her production quota." (*Id.*).

The court has reviewed Plaintiff's deposition for evidence of a productivity related claim, and has considered both parties' arguments on this issue. At this time, the court finds that Defendant has failed to meet its burden to show that discovery sought by Plaintiff is either unreasonably burdensome or irrelevant. Plaintiff has connected her FMLA claims to productivity by alleging adverse employment actions taken against her due to the incorporation of FMLA leave time into her productivity average. While Plaintiff may also have other FMLA related claims against Defendant, it does not change the fact that Plaintiff has alleged wrongful productivity practices taken by Defendant, much the same as the other twenty employees that filed their declarations with the court.

Plaintiff's First Production Request also does not strike the court as overly broad. Plaintiff requests personnel and occupational health resources files for approximately 25 individuals, and productivity related documents for approximately 200 named individuals, with the team position of each individual already listed. Defendant does not specify its burden to produce these documents, and the court finds that Plaintiff's request falls in the amount and type of discovery necessary for Plaintiff to show that a class exists and that she is an appropriate representative. Plaintiff's requests for FMLA leave logs and documents related to FMLA compliance generated by six named individuals also are relevant to whether a class should be certified and the proper scope of the class action.

Plaintiff's proposed depositions of Michael Davies, Drew Williams, and Robert White, and further deposition of Krista Meyer, also do not appear beyond the scope of Plaintiff's complaint. Krista Meyer ran Motorola's FMLA program in Rockford. According to Plaintiff,

Michael Davies submitted a Declaration that he has personal knowledge of the methods used to track production at Motorola's Rockford facility. Drew Williams was an IT expert at Motorola's Rockford facility and possesses information with regard to the computer programs used to track productivity. Robert White developed the software program that was used to track productivity at the Rockford plant. Because the court does not accept Defendant's assertion that Plaintiff cannot assert a claim of productivity at this time, the court finds no reason why Plaintiff should not be able to proceed with her deposition of persons knowledgeable of Defendant's productivity programs.

### III. Conclusion

For the foregoing reasons, the court finds that Plaintiff is entitled to proceed with discovery to determine if a class should be certified under Rule 23. Defendant's Motion for a Protective Order is denied.

ENTER:

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 11/22/04